UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 05 C 7094 |
| | ) | |
| CUMMINS-ALLISON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant Cummins-Allison Corporation ("Cummins") for summary judgment in its favor on the issues raised in the complaint of Plaintiff John Brown. For the reasons set forth below, the motion is granted.

**BACKGROUND**

Cummins is a manufacturer of money-handling machines such as coin and currency counters. Brown, an African-American male, worked for Cummins as a full-time employee from March 1998 until May 2004. Throughout his tenure, Brown performed packing and assembly work. In early 2001, Cummins hired Sandra Santos to supervise the assembly department, in which Brown worked.

Starting in October of that year, Santos met with assembly personnel to reiterate the need to meet an 85% performance level in production per month. She also notified assemblers that discipline would result if performance standards were not met. Production levels are calculated based on information provided by the employee regarding how many parts he or she produced during a day's shift and the amount of time it took to produce them. Employees fill out a form with this data.

Brown concedes that his performance levels fell below 85% on several occasions from 2001 until his termination. However, Santos did not approach him about these difficulties until March 2003, when she began issuing verbal warnings. When the shortfalls continued, the warnings were issued in writing. In March 2004, Brown filed a discrimination charge, alleging that the written warnings he had received were racially motivated. In April 2004, Santos met with Brown and informed him that, in light of his continued failure to meet the 85% production level, he would be suspended for three days. Brown did not bring his production level above the 85% mark, and on May 7, his employment was terminated. The termination document noted that Brown had performed at above the minimum performance level only 50% of the time for the 12 months prior to his termination.

Brown then amended his charge to include an allegation that his termination was retaliatory. The EEOC issued a right to sue letter, and Brown timely filed this suit against Cummins, alleging only unlawful retaliation. Discovery has been completed,

and Cummins now moves for summary judgment in its favor pursuant to Fed. R. Civ. P. 56.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must identify the specific portions of the total record, which it believes establishes the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248, 106 S. Ct. 2505 (1986); Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. Anderson, 477 U.S. at 255; Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). With these principles in mind, we turn to the instant motion.

**DISCUSSION**

Although Brown filed charges for discrimination and retaliation, he has chosen to pursue only the latter. We restrict our consideration accordingly. See Culver v. Gorman & Co., 416 F.3d 540, 550 (7th Cir. 2005).

Brown has offered no direct evidence that Cummins' actions were motivated by a desire to retaliate for his filing a charge of discrimination in March 2004, so he must proceed using the burden-shifting framework originally set forth in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). To establish a claim for retaliation, he must present a prima facie case by demonstrating that he engaged in a statutorily protected activity, that he was meeting his employer's legitimate expectations, that he suffered an adverse action, and that he was treated less favorably than similarly situated employees who did not engage in the same activity. See Stone v. City of Indianapolis Publ. Util. Div., 281 F.3d 640, 644 (7th Cir. 2002). If he can do so, the burden shifts to Cummins to provide a legitimate business reason for the action it took. See id. Brown must then offer evidence that Cummins'

proffered reason is pretextual, a lie concocted to cover up the actual discriminatory impetus for the adverse action. See id. To defeat the motion for summary judgment, Brown must point to a genuine issue of material fact that, if resolved in his favor, would allow a reasonable jury to return a verdict for him.

There is no dispute that Brown engaged in a statutorily protected activity when he filed his discrimination charge. There is also no dispute that he suffered an adverse action in the form of his three-day suspension and the eventual termination of his employment. However, with respect to the other two aspects of Brown's prima facie case, the parties do not agree.

Cummins contends that Brown was not meeting its legitimate expectation that he perform at or above an 85% monthly performance rate. On this point, Brown urges that the data Cummins collected and used to calculate his efficiency level was inaccurate because another worker was altering Brown's forms after he turned them in. However, he does not contest, and in fact acknowledges, that his performance was not 85% or above for seven months in 2003 and 2004. In light of the latter assertion, no reasonable jury could conclude that Brown was meeting his employer's expectations for his performance.

Moreover, Brown has not advanced any employee who consistently performed below the 85% production standard who was not terminated. Without such a point of comparison, there is no way for a finder of fact to conclude that the treatment he

received was spurred by his protected conduct. See Bio v. Federal Express Corp., 424 F.3d 593, 597 (7th Cir. 2005). In fact, he does not dispute that another assembler, Guadalupe Bueno, was given written warnings and was thereafter suspended and fired for failing to meet her production requirements. There is no indication that Bueno ever filed a discrimination charge. Because Brown has not offered any evidence to counter the inferences to be drawn from a comparison of his and Bueno's respective situations, a reasonable finder of fact could not conclude that he was treated differently from another employee who exhibited repeated failures to achieve the 85% threshold. Consequently, Brown has not set forth a viable prima facie case of retaliation, and summary judgment in favor of Cummins is warranted.

Even assuming that Brown could establish all four elements of his prima facie case, Cummins has advanced a legitimate business reason for its actions toward Brown: his failure to comply with the 85% production threshold requirement that applied to all assemblers. Maintaining a baseline level of production is a legitimate interest of any manufacturer, so the burden shifts back to Brown to demonstrate that this reason is a sham designed to obscure a retaliatory motivation for the suspension and termination.

To support his position that the proffered reason is pretextual, Brown points to the alleged alterations to his time cards. However, there is no indication that he brought those allegations to Santos's attention. Brown contends that Michael Burage, a union steward, spoke to Santos on his behalf with regard to the time sheets, but the

deposition testimony that he points to in support of this assertion does not indicate that Burage ever addressed any discrepancies on Brown's time cards with Santos. Furthermore, any alterations would have taken place before Brown filed his charge. Because Cummins could not devise a story to cover up knowledge that it did not have, Brown's proffered evidence does not support a charge of unlawful retaliation.

Brown also argues that his production rate fell below 85% 24 times before 2003 and seven times during 2003 and 2004. He appears to argue that Cummins' lack of action during the earlier period indicates that the reason for his suspension and termination was something other than the fact that he did not meet production standards for seven months in 2003 and 2004. He also contends that the termination was based, at least in part, on a warning letter about prior production issues that was not to have any effect after December 2003. Neither of these points contradicts the previous assertion that Brown was not meeting the 85% production requirement. The fact that Cummins followed a progressive disciplinary system rather than immediately firing underperforming employees does not establish that the real reason for Brown's discipline was something other than his acknowledged shortfalls in production. As for the warning letter, Brown merely asserts that it should not have been taken into account, not that its contents were inaccurate or otherwise incorrectly indicated that he was not meeting his employer's expectations. Consequently, neither of these argument

allows an inference that Cummins fired Brown for filing a discrimination charge rather than because he was not meeting his work requirements.

Lastly, Brown points to the close temporal proximity of his discrimination charge and his suspension and termination. Although the two adverse actions undoubtedly followed hard on the heels of the filing of the charge, a small amount of time is seldom sufficient to establish pretext. Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1034 (7th Cir. 1999). Here, discipline had begun and timelines had been put in place before the charge was filed. The short period of time that elapsed between the charge and the eventual discipline is not enough to raise an inference that Cummins is lying about the reasons it took the actions it did in this case.

## CONCLUSION

Based on the foregoing, the motion for summary judgment of Cummins-Allison is granted.

_____
Charles P. Kocoras
United States District Judge

Dated:    October 30, 2006